UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH MARTELL and DENNIS
MARTELL,                                    Case No. 2:07-cv-14068

         Plaintiffs,                        Honorable Nancy G. Edmunds

v.

ROBERT TURCHECK; NICOLE TURCHECK;
JS REALTY, LLC; RONNIE DUKE;
SPECIALTY HOLDINGS, INC.; DANIELLE
NAPPER; ALFREDO SANTILLI; METRO-WEST
TITLE AGENCY, INC.; LAWYERS TITLE
INSURANCE CORPORATION; KASSEM
AHMAD ZREIK; ZREIK INVESTMENTS, LLC;
d/b/a DESKTOP APPRAISAL SERVICES, LLC;
BRANDON GUBACZ; PREMIER MORTGAGE
FUNDING, INC.; COUNTRYWIDE BANK, N.A.;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; AMANDA BIRCH; AURORA
LOAN SERVICES, LLC; CARTERET
MORTGAGE CORPORATION; NATIONS
TITLE OF OHIO AGENCY, LLC; WILINEVAH
J. RICHARDSON; SABER ZREIK; JENNIFER
ZREIK; and HOMECOMINGS FINANCIAL, LLC

         Defendants.
_____/


**OPINION AND ORDER GRANTING THE ZREIK DEFENDANTS' MOTION TO
DISMISS [59] AND DENYING PLAINTIFFS' MOTION TO AMEND [79]**

    Plaintiffs Deborah Martell and Dennis Martell filed this action against

Defendants Kassem Ahman Zreik and Zreik Investments, LLC d/b/a Desktop

Appraisal Services, LLC ("the Zreik Defendants") among others.  This matter

comes before the Court on the Zreik Defendants' Motion to Dismiss and on

Plaintiffs' Motion to Amend the Second Amended Complaint.

Plaintiffs' Second Amended Complaint alleges claims of breach of contract, fraud, negligence, civil conspiracy, concert of action, and breach of occupational code. The Zreik Defendants filed a Motion to Dismiss all of Plaintiffs' claims. Plaintiffs filed a Response, in which they agreed to dismiss their breach of contract and breach of occupational code claims. Plaintiffs continue to assert claims for fraud, negligence, civil conspiracy, and concert of action. The Zreik Defendants have filed a Reply.

In their Proposed Third Amended Complaint, Plaintiffs seek to add claims for conversion and restitution. The Zreik Defendants filed a Response and informed Plaintiffs that they would not consent to the Proposed Amendment. Plaintiffs have filed a Reply.

For the reasons set forth below, the Zreik Defendants' Motion to Dismiss is GRANTED and the Plaintiffs' Motion to Amend the Second Amended Complaint is DENIED.

## I.     Facts

Plaintiffs Deborah Martell and Dennis Martell are married individuals residing in Livonia, Michigan. (2nd Am. Compl. ¶ 1.) Defendant Kassem Ahman Zreik is a licensed appraiser. (*Id.* at ¶ 18.) He appraises property on behalf of Defendant Zreik Investments, LLC, d/b/a Desktop Appraisal Services, LLC, located in Dearborn Heights, MI. (*Id.* at ¶¶ 17-19.)

"Other defendants" in this action include property sellers and employees of the title companies, mortgage companies, and brokerage firms who allegedly

participated in a fraud scheme that has resulted in hundreds of faulty mortgages in the Detroit area.  (2nd Am. Compl. ¶¶ 3-35.)

There are three loans at issue in the Second Amended Complaint.  (Pls.' Resp. at 4.)  The first is for Swan Island; the second is for Middlepointe; the third is for Triangle Drive.  Plaintiffs allege that the Zreik Defendants were involved with the Swan Island and Triangle Drive loans.[1]  (2nd Am. Compl. ¶ 20.)

In 2006, Plaintiff Deborah Martell became a member of an "investment group."  (2nd Am. Compl. ¶¶ 37, 42.)  Other defendants represented to Deborah that the investment group was a group of investors who would purchase foreclosed properties as investments.  (*Id.* at ¶¶ 38, 42.)  Other defendants requested Deborah's personal information and explained that Deborah's credit would be used on behalf of the investment group to acquire investment properties, in exchange for an investor fee.  (*Id.* at ¶¶ 39, 42.)  Other defendants indicated that Deborah would make certain payments on behalf of the investment group for approximately six months.  (*Id.* at ¶¶ 40, 42.)  Deborah provided the investment group with her and her husband's personal information.  (*Id.* at ¶¶ 43, 42.)

Plaintiffs allege that upon receiving Plaintiffs' personal information, the investment group arranged for primary mortgage loans to be taken out in Plaintiffs' names *personally*, without their authorization or knowledge.  (2nd Am. Compl. ¶ 48.)

---

[1] Plaintiffs do not allege that the Zreik Defendants were involved with the Middlepointe loan.  Therefore, subsequent discussion refers to the Swan Island and Triangle Drive loans unless expressly indicated.

With regard to the Swan Island property, Plaintiffs allege that Deborah attended a title closing at Metro-West Title with Defendant Santilli.[2] (2nd Am. Compl. ¶ 54.) Deborah arrived at 4:30 p.m. (*Id.* at ¶ 55.) Santilli indicated the closing needed to proceed quickly because he needed to leave by 5:00 p.m. (*Id.*) Santilli assured Deborah that this was an investment transaction and told Deborah that he closes on properties for this group in a similar manner all the time. (*Id.* at ¶ 57.) He then rushed her through the closing. (*Id.* at ¶ 58.) As a result, Deborah did not read any of the closing documents that she signed. (*Id.*)

Plaintiffs allege that the loan documents Deborah signed at the closing for the Swan Island property were falsely prepared by Defendant Gubacz, an employee of Defendant Premier Mortgage Funding, Inc.[3] and Defendant Countrywide Bank, N.A.[4] (2nd Am. Compl. ¶ 22.) The loan documentation was supported by the Zreik Defendants' allegedly false appraisal of the Swan Island property. (*Id.* at ¶ 79.)

Specifically, Plaintiffs allege that the Zreik Defendants inflated the value of Swan Island when they appraised the property. (2nd Am. Compl. ¶ 79.) Other Defendants purchased the Swan Island property on May 22, 2006, for $1,000,000. (*Id.* at ¶ 77.) The Zreik Defendants appraised the property five months later. (*Id.* at ¶ 78.) Despite a declining and troubled Michigan real

---

[2] Santilli is a representative of Defendant Metro-West Title Agency, Inc., the title agency that conducted the closing on the Swan Island property. (2nd Am. Compl. ¶¶ 14, 15.)
[3] Premier was the broker for the mortgage on the Swan Island property. (2nd Am. Compl. ¶ 23.)
[4] Countrywide was the lender of the mortgages on the Swan Island property. (*Id.* at ¶ 24.)

estate market, the Zreik Defendants appraised the property at a value of $1,200,000.  (*Id.*)

Plaintiffs allege that the Zreik Defendants received $750 for their false appraisal, and that as a result of these transactions, Deborah is now personally liable for two outstanding loans and mortgages in her name for the Swan Island property.  (2nd Am. Compl. ¶¶ 80, 92.)

With regard to the Triangle Drive property, Plaintiffs allege that Deborah first received an investment in the mail, with coupons, payment money, and directions to make payments on the property.  (2nd Am. Compl. ¶ 44.)  Other defendants led Deborah to believe that another investor had attended a closing on behalf of the group, and that it was simply Deborah's responsibility to make payments.  (*Id.* at ¶ 45.)  Deborah made payments as directed.  (*Id.* at ¶ 46.)

Even though Deborah did not attend the closing for Triangle Drive, Deborah's signature, dated November 20, 2006, appears on the closing documents.  (2nd Am. Compl. ¶¶ 121, 129, 116, 119.)  The closing documents include a Note for $475,000 and a Mortgage.[5]  (*Id.* at ¶ 119.)  The closing documents indicate that other defendants sold the Triangle Drive property to Deborah for $650,000 on November 20, 2006. (*Id.* at ¶ 116.)  The Zreik Defendants' allegedly false appraisal supported this price.  (*Id.* at ¶ 118.)

Plaintiffs allege that the Zreik Defendants inflated the value of Triangle Drive when they appraised the property at $650,000.  (2nd Am. Compl. ¶ 118.)  The SEV on the Triangle Drive property indicates that the fair market value is

---

[5] Defendant Richardson signed as notary and witness of Deborah's signature on the Mortgage.  (2nd Am. Compl. ¶ 120.)

approximately $435,000. (*Id.* at ¶ 117.) Moreover, $650,000 is almost double what the other defendants paid for the property 18 months earlier. (*Id.* at ¶ 116.)

Plaintiffs allege that the Zreik Defendants received $750 for their false appraisal, and that as a result of these transactions, Deborah is now personally liable for a loan in her name for the Triangle Drive property. (2nd Am. Compl. ¶¶ 123, 131.)

## II.  Analysis

### A.  Motion to Dismiss

#### 1.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiffs, the court must assume that Plaintiffs' factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). This standard of review "requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

As observed by the Sixth Circuit, the Supreme Court recently clarified what a plaintiff must plead to survive a Rule 12(b)(6) motion to dismiss. *Assoc.*

*of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(citing *Bell Atl. Corp. v. Twombly*, __ U.S. __,127 S. Ct. 1955 (2007)).

Specifically, it rejected the standard announced in *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957).

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 127 S. Ct.] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 Ct. at 1969.

*Assoc. of Cleveland Fire Fighters*, 502 F.3d at 548. The Court's function "is not

to weigh the evidence or assess the credibility of witnesses but rather to examine

the complaint and determine whether the plaintiff has pleaded a cognizable

claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003)

(internal citations omitted).

The Zreik Defendants move to dismiss Plaintiffs' claims for fraud,

negligence, civil conspiracy and concert of action. Plaintiffs' fraud claims are

discussed first.

## 2. Fraud

Pursuant to Federal Rule of Civil Procedure 9(b), fraud must be pled with

specificity. This requires that the plaintiff allege, at minimum, " the time, place,

and contents" of the misrepresentation. *American Town Center v. Hall 83 Assocs.*, 912 F.2d 104, 110-11 (6th Cir. 1990) (citing *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984) (citations omitted)).

To constitute actionable fraud, Plaintiffs must show:

> (1) that defendant made a material representation;
> (2) that it was false;
> (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;
> (4) that he made it with the intention that it should be acted upon by plaintiff;
> (5) that plaintiff acted in reliance upon it; and
> (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (citations omitted).

Michigan law also recognizes "third party fraud," which refers to those instances where the false representations are not shown "to have been made directly to the party claiming to have relied upon them:"

> While some connection, direct or indirect, between a party charged with making false representations and a party relying thereon must be shown, it is not essential, in support of a cause of action for damages resulting from false representations, that the false representations be shown to have been *made directly to the party claiming to have relied upon them*. It has been repeatedly held that where a party makes false representations to another with the *intent or knowledge* that they be *exhibited or repeated* to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements for the damages resulting from the fraud.

*Oppenhuizen v. Wennersten*, 139 N.W.2d 765, 768 (Mich. Ct. App. 1966).

Where the defendant has not made the representation directly to the plaintiff, the injury suffered by the plaintiff must be *directly* traceable to the defendant's misrepresentation. *See McEldowney v. Air Products & Chems., Inc.*, No.

273572, 2007 WL 1576390, at *4 (Mich. Ct. App. May 31, 2007) (emphasis added).

### a. Plaintiffs' Allegations

With regard to the first element of fraud, Plaintiffs allege that the Zreik Defendants made material representations to Plaintiffs when it prepared appraisals of the Swan Island and Triangle Drive properties. (2nd Am. Compl. ¶ 242.) These appraisals were part of each of the loans that were presented to Plaintiffs as "investment loans" by other defendants. (Pls.' Resp. at 13.) Specifically, Defendant Santilli presented the Swan Island investment loan to Plaintiff Deborah Martell on October 31, 2006, at approximately 4:30 p.m. at Metro-West Title. (2nd Am. Compl. ¶¶ 54-55.) The Triangle Drive investment loan was presented to Plaintiffs by way of the investment group's mailing of mortgage coupons that included instructions to make payments. (*Id.* at ¶ 44.)

With regard to the second element, Plaintiffs allege that the appraisals were false because they severely inflated the values of the Swan Island and Triangle Drive properties. (2nd Am. Compl. ¶ 242.) Specific to the Swan Island property, Plaintiffs allege that Defendants Turchecks purchased the property on May 22, 2006, for $1,000,000. (*Id.* at ¶ 77.) Five months later, despite a declining and troubled Michigan real estate market, the Turchecks sold the Swan Island property to Deborah for $1,200,000. (*Id.* at ¶ 78.) The appraisal supported the sale price, and thus falsely inflated the value of the Swan Island real estate. (*Id.* at ¶ 79.) Specific to the Triangle Drive property, Plaintiffs allege that Defendants Turchecks sold the Triangle Drive property to Deborah for

$650,000 on November 20, 2006, which is almost double what the Turchecks paid for the property 18 months earlier. (*Id.* at ¶ 116.) Again, the appraisal supported the sale price, and thus falsely inflated the value of the Swan Island real estate. (*Id.* at ¶ 118.)

Plaintiffs further allege that the Zreik Defendants inflated the property values knowingly or recklessly; that the Zreik Defendants intended that the Plaintiffs rely on the legitimacy of the investment loans, including the appraisals as key components; that as a result, Plaintiffs have suffered injury because they are now personally liable for these mortgage loans. (2nd Am. Compl. ¶¶ 243, 244, 245.)

### b. Analysis

Applying the principles of Michigan law set forth above, this Court dismisses Plaintiffs' fraud claim. Contrary to the Zreik Defendants' assertions, Plaintiffs *do* allege facts to support their allegation that the Zreik Defendants made representations to them with their appraisals of Swan Island and Triangle Drive, even though Plaintiffs do not allege having had any contact with the Zreik Defendants. (Defs.' Mot. to Dismiss at 6.) As previously stated, Michigan recognizes third party fraud. *Oppenhuizen*, 139 N.W.2d at 768. Thus, the Zreik Defendants may be liable for inflating the property values if it can be shown that the other defendants presented the false appraisals to Plaintiffs, and that Plaintiffs suffered harm as a direct result.[6]

---

[6] The "direct harm" requirement of third party fraud is essentially the reliance element of all fraud claims.

Plaintiffs, however, *do not* allege facts to support their allegation that Plaintiffs relied on the Zreik Defendants' allegedly false appraisals. In fact, Plaintiffs allege the contrary. With regard to the Swan Island property, the Second Amended Complaint alleges that Plaintiff Deborah Martell attended the closing, but did not read any of the documents that she was signing. (2nd Am. Compl. ¶ 58.) This indicates the Deborah did not review the appraisal at the closing. Therefore, Deborah could not have relied on the false appraisal as a basis for signing the loan documents. With regard to the Triangle Drive property, the Complaint alleges that Deborah did not sign any of the closing documents, including the Note and Mortgage, but that the Note and Mortgage bear Deborah's signature, dated November 20, 2006. (*Id.* at ¶¶ 121, 119.) Since Plaintiffs allege that Deborah's signature on the loan documents was forged, Deborah could not have relied on the false appraisal as a basis for signing the loan documents. In sum, Plaintiffs do not and cannot state a claim for fraud because they do not allege "direct harm," or reliance on the Zreik Defendants' alleged misrepresentations.[7]

### 3. Negligence

The Zreik Defendants also seek to dismiss Plaintiffs' negligence claim. To establish a prima facie case of negligence, a plaintiff must prove (1)

---

[7]    The Complaint also fails to state a claim for silent fraud. "Michigan courts have recognized that silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure." *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998). Plaintiffs do not allege having ever met or spoken with the Zreik Defendants. Thus, Plaintiffs fail to allege that the Zreik Defendants had a legal duty of disclosure, and thereby fail to state a claim for silent fraud.

that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of the duty caused the plaintiff's injuries, and (4) that the plaintiff suffered damages." *Teufel v. Watkins*, 705 N.W.2d 164, 165 (Mich. Ct. App. 2005) (citations omitted).  In determining whether the defendant owes a duty to the plaintiff, the court considers, "among any other relevant considerations, the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented."  *Miller v. Ford Motor Co.(In re Certified Question from Fourteenth Dist. Court of Appeals of Texas)*, 740 N.W.2d 206, 211 (Mich. 2007).  The relationship of the parties, however, is the most important factor to be considered.  *Id.*  A duty may also be imposed by statute provided that the requirements of the statute were intended to prevent the harm that the plaintiff has suffered.  *Johnson v. Bobbie's Party Store*, 473 N.W.2d 796, 801 (Mich. Ct. App. 1991).

### a.  Plaintiffs' Allegations

To support their claim of negligence, Plaintiffs allege that the Zreik Defendants owed them a duty to appraise the Swan Island and Triangle Drive properties with reasonable care; that the Zreik Defendants breached that duty by providing an appraisal that significantly inflated the values of the properties; and that this breach has caused Plaintiffs to suffer damages.  (2nd Am. Compl. ¶¶ 246-248.)

With regard to the first element, Plaintiffs argue that a duty should be imposed on three grounds.  (Pls.' Resp. at 7-8, 9-10.)  First, Plaintiffs assert that the harm to Plaintiffs was more than foreseeable; it was "*expected*" because the

Zreik Defendants submitted the appraisals to the banks <u>intending</u> to trigger the issuance of mortgage funds in Plaintiffs' names—mortgage funds that would then be captured by the investment group. (*Id.* at 7-8.)

Second, Plaintiffs assert that the relationship among all the parties creates a duty owed by the Zreik Defendants to Plaintiffs. (*Id.* at 7.) Plaintiffs reason as follows. The Zreik Defendants were key members of the fraudulent investment group. (*Id.*) Other defendants were members of the same fraudulent investment group, and had direct contact and relations with Plaintiffs in order to advance their scheme. (*Id.*) Thus, Plaintiffs argue, by virtue of the Zreik Defendants' association with the other defendants, the Zreik Defendants owe a duty of reasonable care to Plaintiffs.

Third, Plaintiffs argue that Michigan's Occupational Code for appraisers creates a legally enforceable duty owed to them because it was intended to protect consumers from bad loans and inflated real estate. (Pls.' Resp. at 9.) As a result of the Zreik Defendants' violation of Michigan's Occupational Code, Plaintiffs are liable for two bad loans and owe money on inflated real estate. (*Id.* at 10.) Thus, Plaintiffs suffer the exact type of harm the statute aims to prevent. (*Id.*)

### b. Analysis

This Court dismisses Plaintiffs' negligence claim because Plaintiffs cannot show that the Zreik Defendants owed them a duty. First, despite Plaintiffs' foreseeability argument, the relationship between the parties is the most important factor to consider in determining whether a duty exists. *Miller*, 740

N.W.2d at 211. Plaintiffs, however, had no relationship with the Zreik Defendants.[8] To impose a duty, the law requires a relationship between the particular defendant(s) and the particular plaintiff(s). *Buczkowski v. McKay*, 490 N.W.2d 330, 332-33 (Mich. 1992). In this case, then, the law requires a relationship between Plaintiffs and the Zreik Defendants. A relationship between Plaintiffs and other members of the fraudulent investment group, with whom the Zreik Defendants are allegedly associated, does not create a legally enforceable duty on the part of the Zreik Defendants to Plaintiffs.

Second, the Zreik Defendants' alleged violation of Michigan's Occupational Code for appraisers does not establish duty. Plaintiffs voluntarily dismissed their claim for violation of the Occupational Code because there is no private right of action. (Pls.' Resp. at 2.) Private individuals cannot sue appraisers for engaging in the prohibited conduct set forth in Mich. Comp. Laws Ann. § 339.2635 (West 2008). *Claire-Ann Co. v. Christenson & Christenson, Inc.*, 566 N.W.2d 4, 6 (Mich. Ct. App. 1997) (citations omitted). It follows that § 339.2635 was not intended to impose a duty on the part of appraisers to private individuals. Since Plaintiffs cannot show that the Zreik Defendants owed them a duty, Plaintiffs cannot state a claim for negligence.

### 4. Civil Conspiracy

Plaintiffs' conspiracy claims are also the subject of the Zreik Defendants' Motion to Dismiss. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to

---

[8] Plaintiffs do not allege having ever met, spoken with, or seen the Zreik Defendants.

accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992)), *aff'd* 693 N.W.2d 358 (Mich. 2005). "Conspiracy entails 'an agreement, or preconceived plan to do an unlawful act.'" *Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 730 (Mich. Ct. App. 1985) (citing *Bahr v. Miller Bros. Creamery*, 112 N.W.2d 463, 469 (Mich. 1961). Furthermore, in order to support a claim of conspiracy, it is necessary for the plaintiff to prove a separate, actionable tort. *Advocacy Org. for Patients & Providers*, 670 N.W.2d at 580 (quoting *Early Detection Center, PC v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)). "'Concert of action' cannot be the tort or unlawful action underlying a conspiracy claim." *Cousineau*, 363 N.W.2d at 730.

### a. Plaintiffs' Allegations

To support their conspiracy claims, Plaintiffs allege that Defendants Turchecks, JS Realty, Duke, Specialty Holdings, Napper, Santilli, Zreik, Desktop Appraisal, Gubacz, Birch, Richardson, Saber Zreik and Jennifer Zreik (the "conspirators") were engaged in a concerted action to accomplish a criminal or unlawful purpose and/or a lawful purpose by criminal or unlawful means. (2nd Am. Compl. ¶¶ 154, 249.) Plaintiffs further allege that the conspirators had an agreement or preconceived plan to lure individuals into an investment group with false representations of investing in foreclosed property, to obtain their personal and financial information, to borrow money in their names (sometimes multiple times on one property), and to keep the cash from the sale. (*Id.* at ¶ 250.) Part

of the agreement or preconceived plan was to have Plaintiffs purchase Swan Island from Defendants Turchecks at an inflated price, and to have Plaintiffs obtain loan proceeds for properties which they do not own.  (*Id.* at ¶ 251.)

### b.  Analysis

Plaintiffs' conspiracy claim is dismissed because the Second Amended Complaint merely concludes there was an agreement between the conspirators; it does not allege any underlying factual support for the conclusion that the Zreik Defendants entered into an agreement or conspired with any of the other defendants.  There is no allegation that the Zreik Defendants met with the other alleged conspirators, discussed the appraisals with them, or agreed on a result for any appraisal in advance.  (Defs.' Reply at 5.)  There is no allegation that the Zreik Defendants got paid a share of the alleged ill-gotten gains from the conspiracy.  (*Id.*)  The Complaint merely alleges that the Zreik Defendants received $750 for each appraisal.  (2nd Am. Compl. ¶¶ 80, 123.)

Furthermore, Plaintiffs' Proposed Third Amended Complaint does not include allegations that provide the requisite underlying factual support for Plaintiffs' conspiracy claim.  Plaintiffs argue that this is because they are only beginning to understand the depth and scope of the investment group's wrongful activities.  (Pls. Mot. to Amend the 2nd Am. Compl. at 6.)  While this may be true, it does not change the fact that Plaintiffs have tried and failed to allege conspiracy three times.  It is clear that Plaintiffs cannot allege conspiracy.  Thus, the claim must be dismissed.[9]

---

[9]     Additionally, as previously discussed, Plaintiffs' claims of fraud and negligence are dismissed.  Since these claims are dismissed, and since concert

### 5. Concert of Action[10]

Finally, the Zreik Defendants seek to have Plaintiffs' concert of action claim dismissed. A plaintiff may recover under concert of action "if [he] can establish that all defendants acted tortiously pursuant to a common design." *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164, 176 (Mich. 1984). "Concert of action is itself a claim which, like conspiracy, cannot exist independently of an underlying tortuous act." *Cousineau*, 363 N.W.2d at 731 (Mich. Ct. App. 1985).

Plaintiffs have not alleged an underlying tort here. As discussed above, Plaintiffs' claims of fraud and negligence are dismissed. Since these claims are dismissed, there is no separate, actionable tort to support Plaintiffs' claim of concert of action.

### B. Motion to Amend

Plaintiffs request to amend their Second Amended Complaint to add claims for conversion and restitution.

### 1. Standard of Review

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is freely granted where justice so requires. See FED. R. CIV. P. 15(a). However, a motion to amend a Complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178 (1962).

---

of action cannot be the underlying tort of a conspiracy claim, there is no separate, actionable tort to support Plaintiffs' claim of conspiracy.

[10] Plaintiffs do not state concert of action as a claim separate from conspiracy in the Second Amended Complaint. In their Response, however, they state that was their intent. (Pls.' Resp. at 16.)

A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss. *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). Thus, the court uses the standard applicable to motions to dismiss, accepting well-pleaded allegations as true. *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980).

### 2. Conversion

Plaintiffs seek to add a claim for "civil" or common-law conversion. Plaintiffs' Motion to Amend, however, refers to § 600.2919(a) expressly, and Plaintiffs' Proposed Third Amended Complaint recites the elements of statutory conversion. In response, the Zreik Defendants assert that Plaintiffs' *common-law* conversion claim could not withstand a motion to dismiss, and thus amendment would be futile. Due to the parties' confusion over which kind of conversion claim Plaintiffs wish to add, this Court addresses both claims.

### a. Statutory Conversion

"Statutory conversion … consists of knowingly 'buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.' MCL 600.2919a." *Campbell v. Sullins*, 667 N.W.2d 887, 896 (Mich. Ct. App. 2003) (citing *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999). The language of Mich. Comp. Laws Ann. § 600.2919(a) (West 1961) indicates that "[t]he actions proscribed by the statute—buying, receiving, or aiding in the concealment—all occur after the property has been stolen,

embezzled, or converted." *Campbell*, 667 N.W.2d at 896 (quoting *Marshall Lasser, PC v. George*, 651 N.W.2d 158, 163 (Mich. Ct. App. 2002)).

### i. **Plaintiffs' Allegations**

To support their claim for statutory conversion, Plaintiffs allege that the Zreik Defendants knowingly received, possessed, concealed or aided in the concealment of stolen, embezzled, or converted mortgage funds from the Swan Island, Middlepointe, and Triangle Drive loans. (Proposed 3rd Am. Compl. ¶¶ 283, 284.) Plaintiffs also allege that Plaintiffs remain liable for the mortgage funds, even though they have not received any of the mortgage proceeds, and even though they have not received title to the Middlepointe or Triangle Drive properties. (*Id.* at 286.) In their Motion, Plaintiffs assert that the mortgage funds went "exclusively to the benefit of the fraudulent investment group" including the Zreik Defendants. (Pls.' Mot. to Amend the 2nd Am. Compl. at 4.)

### ii. **Analysis**

These allegations would not withstand a motion to dismiss. As stated above, to withstand a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Assoc. of Cleveland Fire Fighters*, 502 F.3d at 548 (citing *Twombly*, 127 S. Ct. at 1964-65 (citations and quotation marks omitted)).

The Proposed Complaint merely concludes that the Zreik Defendants knowingly received, possessed, concealed or aided in the concealment of mortgage funds. (Proposed 3rd Am. Compl. ¶ 283.) The Complaint, however, does not state how the Zreik Defendants committed statutory conversion. It does

not specify which action—the receipt, possession, concealment, or aid in the concealment of mortgage funds—forms the basis of Plaintiffs' statutory conversion claim. Furthermore, it does not clarify which money was statutorily converted or when. For example, it does not state whether the Zreik Defendants committed statutory conversion when they were paid $750 for the Swan Island and Triangle Drive appraisals prior to the issuance of the loans in Plaintiffs' names; or whether the Zreik Defendants committed statutory conversion in taking some other action with regard to some other amount of mortgage funds at some other time.[11] (*Id.*) Most importantly, the Proposed Complaint does not provide any factual basis for the conclusion that the Zreik Defendants were accomplices to other defendants who allegedly did convert the mortgage funds. In fact, the Proposed Complaint does not allege that the Zreik Defendants ever met or spoke with the other defendants.

As stated, Plaintiffs' statutory conversion allegations merely recite the elements of a statutory conversion claim. This is not enough to withstand a motion to dismiss. Therefore, this Court denies Plaintiffs' request to amend their Complaint to add a statutory conversion claim.

### b. Common-Law Conversion

The common-law tort of conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or

---

[11] The timing of the Zreik Defendants' alleged involvement is relevant because the actions proscribed by the statute all occur *after* the property has been stolen, embezzled, or converted. *Campbell*, 667 N.W.2d at 896 (quoting *Marshall Lasser, PC*, 651 N.W.2d at 163). If Plaintiffs refer to the $750 that the Zreik Defendants received for their appraisals of both Swan Island and Triangle Drive, Plaintiffs' statutory claim should fail because the appraisal happened before or during the alleged conversion.

inconsistent with the rights therein." *Stewart Title Guar. Co. v. Lockman*, Nos. 5:05-cv-92, 1:05-cv-736, 2008 WL 820359, at *5 (W.D.Mich. March 25, 2008) (citing *AFSCME v. Bank One*, 705 N.W.2d 355, 364 (Mich. Ct. App. 2005)). An action for common-law conversion of money cannot be maintained unless "there was an obligation on the defendant's part to return specific money entrusted to him." *Id.*

This Court denies Plaintiffs' request to add a claim for common-law conversion. Plaintiffs' claim for common-law conversion is based on the conversion of mortgage funds, and mortgage funds are monetary in nature. A claim for common-law conversion of money cannot be maintained unless the defendant had a specific obligation to return money entrusted to him. *Stewart Title Guar. Co.,* Nos. 5:05-cv-92, 1:05-cv-736, 2008 WL 820359, at *5 (citing *AFSCME*, 705 N.W.2d at 364). Plaintiffs do not allege that the Zreik Defendants failed to return to Plaintiffs mortgage funds that were "entrusted" to them.

## 2. Restitution

Plaintiffs also seek to add a claim of "restitution" or unjust enrichment against the Zreik Defendants. In order to sustain a claim for unjust enrichment, the plaintiff needs to show "that the defendant received a benefit *from the plaintiff* and that an inequity resulted to [the] plaintiff as a consequence of the defendant's retention of that benefit." *Liggett Rest. Group, Inc. v. City of Pontiac*, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003) (emphasis added). If the plaintiff is able to show (1) the defendant received a benefit *from the plaintiff* and (2) an inequity results to the plaintiff because the defendant retains the benefit, the law operates to

imply a contract in order to prevent unjust enrichment.  *Barber v. SMH (US) Inc.*,

509 N.W.2d 791, 796 (Mich. Ct. App. 1993) (citations omitted) (emphasis added).

With regard to the first element, the defendant must have received a benefit

directly from the plaintiff.  *See A & M Supply Co. v. Microsoft Corp.*, No. 274164,

2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008).  At minimum, this

involves some sort of direct contact between the parties.  *Id.*

### a.  Plaintiffs' Allegations

To support their claim for unjust enrichment, Plaintiffs allege that the Zreik

Defendants have benefited and been unjustly enriched from receipt of all or part

of the mortgage proceeds from loans improperly taken out in Plaintiffs' names.

(Proposed 3rd Am. Compl. ¶¶ 289, 293.)  Plaintiffs argue that it does not matter

that they did not directly provide the Zreik Defendants with mortgage proceeds;

the mortgage proceeds still came "from the plaintiff" for purposes of unjust

enrichment.  (Pls.' Reply at 5.)  Plaintiffs are mistaken.

### b.  Analysis

Applying Michigan law as set forth above, a claim for unjust enrichment

would not survive a motion to dismiss.  First, the Proposed Third Amended

Complaint does not allege that *Plaintiffs* provided a benefit to the Zreik

Defendants.  It merely states that the Zreik Defendants *have benefited and been

unjustly enriched.*  (Proposed 3rd Am. Compl. ¶ 289.)  In fact, the Proposed

Complaint alleges that Plaintiffs *did not provide a benefit* to the Zreik Defendants

because it expressly states that the loans were taken out in Plaintiffs' names

without their knowledge or authority.  (Proposed 3rd Am. Compl. ¶¶ 57, 69, 72,

75, 87, 96, 100, 101, 134.) Since Plaintiffs do not allege having provided the benefit to the Zreik Defendants, Plaintiffs do not allege the requisite elements of an unjust enrichment claim.

Plaintiffs' argument in their Reply is unpersuasive in light of recent authority indicating that the benefit must have been provided directly to the defendant and that this involves direct contact between the parties. *See A & M Supply Co.*, 2008 WL 540883, at *2. Accordingly, Michigan law requires that Plaintiffs allege that they provided mortgage proceeds directly to the Zreik Defendants. Plaintiffs do not and cannot make any such allegation. In fact, Plaintiffs assert the opposite. It was the mortgage companies, not Plaintiffs, who provided mortgage proceeds to the investment group and to the Zreik Defendants. Thus, this Court denies Plaintiffs' Motion to Amend to add a "restitution" or unjust enrichment claim.

## II.     Conclusion

For the aforementioned reasons, this Court GRANTS the Zreik Defendants' Motion to Dismiss Plaintiffs' claims for fraud, negligence, civil conspiracy, and concert of action, and DENIES Plaintiffs' Motion to Amend the Second Amended Complaint to add claims of statutory or common-law conversion and restitution.


                               s/Nancy G. Edmunds
                               Nancy G. Edmunds
                               United States District Judge

Dated:  July 7, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 7, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager